UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

NICHOLAS DONALD BRAINARD, JR.,           Case No. 17-11254-ta7

    Debtor.

EDWARD A. MAZEL, Trustee,

    Plaintiff,

v.                                                                     Adv. Proc. 17-01060-t

MICHAEL ALLEN HOLLEY,

    Defendant.

## **OPINION**

Plaintiff brought this proceeding to collect a promissory note. Defendant in his answer argued, inter alia, that Plaintiff cannot enforce the note because it is part of an executory contract (the sale of a business) that the estate never assumed, and is now deemed to have rejected. Defendant filed a motion for a "determination" on the alleged executory contract issue. Plaintiff responded with a motion for summary judgment, asking the Court to rule that Defendant is liable for the amounts due under the note. The cross motions have been fully briefed. Being sufficiently advised, the Court finds that the relevant contract documents are too poorly drafted, and the current record too skimpy, to grant full or partial summary judgment to either party. The Court will therefore deny both motions and set the matter for trial.

# I. FACTS

For the limited purpose of ruling on the cross motions,[1] the Court finds that the following facts are not in genuine dispute:[2]

On May 17, 2017, Nicholas Donald Brainard Jr. filed this chapter 7 case. Plaintiff Ed Mazel was appointed the case trustee, in which capacity he continues to serve.

On May 3, 2016, Brainard and Defendant Michael Allen Holley signed a Purchase of Business Agreement. The relevant material terms of the purchase agreement are:

> The Seller is the owner of 50% (the "Shares") of Vape Taos, LLC of 102 C. Paseo del Pueblo Norte, Taos, New Mexico 87571 AND Vape Durango, LLC of 1019 Main Avenue, Durango, Colorado 81301 (the "Corporations") which carries on the businesses of Vape Taos, LLC under the operating name Vape Taos in the State of New Mexico AND Vape Durango, LLC under the operating name of Vape Durango in the State of Colorado.
>
> The Seller desires to sell the Shares to the Purchaser, and the Purchaser desires to buy the Shares.
>
> The price to be paid by the Purchaser to the Seller for the Shares will be $111,015.99 US Dollars (the "Total Purchase Price").
>
> The Closing of the purchase and sale of the Shares will take place on May 3, 2018 (the "Closing Date") . . . .
>
> At Closing, and upon the Purchaser resolving the balance of the Total Purchase Price in full to the Seller, the Seller will Provide the Purchaser with duly executed transfers of the Shares.
>
> A down payment of $20,000.00 US Dollars will be payable by the Purchaser on or before the "Execution" date (May 3, 2016). The balance of $91,015.99 US Dollars (the "Balance Amount") will be payable monthly at $2,500, with the outstanding Balance Amount due on the Closing Date (May 3rd, 2018). . . .

---

[1] The Court will treat Defendant's motion as one for partial summary judgment, because the "determination" requested by Defendant would constitute a partial summary judgment on a key legal issue in the proceeding.

[2] For the most part, the Court takes the facts submitted by the Trustee as true because Holley did not submit any evidence in opposition to the Trustee's alleged facts.

The Balance Amount will be paid by the Purchaser with a promissory note . . . in the form attached . . . .

This Agreement will not be assigned either in whole or in part by any Party without the written consent of the other Party.

Holley signed a $91,015.99 promissory note payable to Brainard on May 3, 2016. The relevant material terms of the note are:

The Borrower promises to pay to the Lender at such address as may be provided in writing to the Borrower, the principal sum of $91,015.99 USD, without interest payable on the unpaid principal.

This Note will be repaid in consecutive monthly installments of $2,500.00 each on the third of each month commencing the month following execution of this Note and continuing until May 3rd, 2018, with the balance then owing under this Note being paid at that time.

Lender's 50% ownership (Vape Taos, LLC AND Vape Durango, LLC) to the Security will be retained by the Lender until all payments due under this Note are paid in full.

If the Borrower defaults in payment as required under this Note or after demand for ten (10) days, the Security will be immediately provided to the Lender and the Lender is granted all rights of possession as the owner.

Both the note and the purchase agreement make clear that Brainard retained his interests in the "Vape" businesses until Holley paid the note in full. The following are not clear, however:[3]

- Are the businesses corporations or limited liability companies?
- Is it one entity or two?
- Who are the other members/shareholders of the businesses?
- Are there operating agreements? Member/stockholder agreements? Did Brainard have the right to sell his membership interests without the consent of the other member(s)? If not, did he obtain that consent?
- Who operated the businesses before May 3, 2016? After May 3, 2016?
- Did Holley assume the role of a 50% member in the businesses, so that all he lacked was "title" to the membership interests?
- Who prepared and filed income tax returns for 2016 and 2017?
- Did the businesses have bank accounts? If so, was Brainard removed from the accounts, replaced by Holley?

---

[3] The list is not intended to be exhaustive, but only to illustrate the incompleteness and ambiguity of the purchase agreement.

- Was Holley paid a salary after May 3, 2016? Receive any draws?
- Does either business have officers? If so, who were they before May 3, 2016? After May 3, 2016?
- Is there a managing member? If so, who?
- Does Holley have the right to cure any default upon receipt of written notice of default?
- Did the parties intend for Brainard to retain "mere legal title" to the Vape business interests, or something more?

Holley did not pay the note as agreed. He contends he stopped paying because Brainard stopped contributing to the operation of the Vape businesses; did not give Holley important passwords to computer and point of sale systems; did not contact vendors and utilities; and did not keep proper records, causing significant tax liabilities. Holley argues Brainard could not transfer the Vape business ownership as agreed because his acts diminished the value of the businesses. The Trustee responds that none of these allegations (which the Trustee disputes) is relevant to the Trustee's ability to enforce the note.

The note has been in payment default since March 2017. When the Trustee brought this proceeding to collect the note, about $75,225 was due. The note was in payment default when Brainard filed this case.

The deadline for the Trustee to assume executory contracts expired July 18, 2017. The Trustee did not assume any executory contracts.

Brainard's bankruptcy schedules do not list any interests in the Vape businesses at issue.

## II. DISCUSSION

A. <u>Summary Judgment Standards</u>.

Summary judgment is appropriate if the pleadings, discovery papers, admissions, and any affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (*citing Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (*citing Celotex*, 477 U.S. at 324). To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B.  Should the Note and Purchase Agreement be Construed Together?

It is true, as the Trustee argues, that promissory notes can be independent legal documents. *See, e.g., Institute for Essential Housing, Inc. v. Keith*, 76 N.M. 492, 494 (S. Ct. 1966) (a promissory note by its nature is a separate contract); *Electrology Laboratory, Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1145 (D. Colo. 2016) (purchase agreement, intercreditor agreement, and promissory note are three related contracts, not one contract). Nevertheless, where, as here, a promissory note is signed at the same time as another document and is closely intertwined with it, a good argument can be made that the documents should be construed together and treated as a single contract. *See, e.g., Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC,* 386 F. Supp. 2d

421, 426 (S.D.N.Y. 2005) (court construed note and purchase agreement together, as one contract); *Cont. AFA Dispensing Co. v. AFA Polytek (In re Indesco Int'l, Inc.)*, 451 B.R. 274, 287 (Bankr. S.D.N.Y. 2011) (stating the general rule that instruments signed at the same time by the same parties for the same purpose generally should be construed as one instrument).

In this case, the note and purchase agreement were signed at the same time, by the same parties, as part of the same transaction. The note is not negotiable,[4] and the purchase agreement cannot be assigned. Apparently, Brainard and Holley intended to have a contractual or business relationship of some kind for two years, and also intended the documents to govern that relationship. The Court rules that the note and purchase agreement should be construed together, as a single instrument.

C.  Are the Note and Purchase Agreement an Executory Contract?

Holley argues that the note and purchase agreement together constitute an executory contract. Although the term is used in § 365, the Bankruptcy Code does not define "executory contract." Most courts, including the Tenth Circuit, have adopted the "Countryman" test for determining whether a contract is executory:

> [A] contract is executory if the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), as quoted in *In re Baird,* 567 F.3d 1207, 1210 (10th Cir. 2009).

Taken literally, "this definition would render almost all agreements executory since it is the rare agreement that does not involve unperformed obligations on either side." *In re Streets &*

---

[4] It does not contain the magic "payable to the order of." See N.M.S.A. § 55-3-104(a)(1).

*Beard Farm P'ship*, 882 F.2d 233 (7th Cir. 1989). The Seventh Circuit thought that the literal definition did not reflect Congress' intent. "Rather, we believe that Congress intended § 365 to apply to contracts where significant unperformed obligations remain on both sides." *Id.* at 235.

Courts have held that installment sales contracts, where the seller's sole remaining obligation is to deliver clear title upon receipt of the sales price, are financing arrangements, and are not executory contracts. *See Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1174 (10th Cir. 2007) (buyer's sole obligation to make installment payments and seller's sole obligation to release its lien when delivering the vehicle title are insufficient to classify a sales contract as executory); *Streets & Beard*, 882 F.2d at 235 (if seller's only remaining obligation is to deliver legal title upon the completion of the payments, the contract is not executory); *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Exp., Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986) (§ 365 does not apply to security agreements, even if they have some formalities of executory contracts); *In re Fitch,* 174 B.R. 96, 102 (Bankr. S.D. Ill. 1994) (business sale agreement that involved real property, personal property, and goodwill was a financing device rather than an executory contract); *Pro Page Partners, L.L.C. v. Message Express Paging Co. (In re Pro Page Partners)*, 270 B.R. 221, 230 (Bankr. E.D. Tenn. 2001) (an agreement to sell personalty is not an executory contract if the seller has surrendered possession, even if title is retained pending payment in full); *In re McDaniel*, 89 B.R. 861, 875 (Bankr. E.D. Wash. 1988) (real estate contracts are security devices, not executory contracts); *In re Hart*, 61 B.R. 135 (Bankr. D. Or. 1986) (reservation of title to goods acts as a security interest and does not make a contract executory); *In re Lewis*, 185 B.R. 66, 68 (Bankr. N.D. Cal. 1995) (installment sale no longer involves an executory contract when the seller has delivered the thing sold); *General Motors Acceptance Corp. v. Rose (Matter of Rose)*, 21 B.R. 272, 275 (Bankr. D.N.J. 1982) (installment auto sales contract is not executory

after car has been delivered). *Cf. Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 537 (9th Cir. 1989) (contract for sale of cattle is executory where transfer of ownership cannot be accomplished by taking possession; seller must provide a bill of sale).

Here, the Court cannot tell exactly what Brainard retained and what he relinquished on May 3, 2016. If all he retained was a security interest in his interest in the Vape businesses, then the note and purchase agreement could be a financing device, rather than an executory contract. On the other hand, if Brainard retained more, such as actual ownership and managerial authority over the Vape businesses, then the note and purchase agreement might be an executory contract. These fact issues prevent entry of summary judgment on this issue.

D.  <u>If the Note and Purchase Agreement are an Executory Contract, Does the Trustee's Failure to Assume the Contract Mean He Can't Collect the Note?</u>

If the trial evidence indicates that the note and purchase agreement are an executory contract, that would not necessarily prevent the Trustee from collecting the note. To date, no discharge has been entered in this case, so the estate is just as obligated to perform under the contract as before the bankruptcy filing. *See In re Blair*, 534 B.R. 787, 791 (Bankr. D.N.M. 2015). Until the estate is excused from performing its obligations, any breach caused by its failure to assume the executory contract would technical, rather than material. *Id.*

Further, the Trustee contends that Holley materially breached the note and purchase agreement by failing to pay as agreed. Such a breach could excuse the estate's performance.. Holley counters that Brainard breached first. On the current record, the Court cannot tell who was legally obligated to do what. It could be, based on trial evidence, that the estate is ready, willing, and able to perform all of its executory obligations under the note and purchase agreement, and is entitled to a judgment requiring Holley to do likewise. On the other hand, it could be that the

estate's performance was excused, but it still has the right to collect the note. Finally, it could be that Holley's performance was excused by a pre-petition default, or that Brainard's actions or inactions give Holley other defenses to payment. Summary judgment related to these issues must be denied.

E.  Other.

The note contains the following provision:

> If the Borrower defaults in payment as required under this Note or after demand for ten (10) days, the Security will be immediately provided to the Lender and the Lender is granted all rights of possession as the owner.

In addition to the issues raised by the obvious drafting problems (is Security a defined term?) (provided by whom?), this provision raises questions about the rights of the parties upon Holley's payment default. Is the estate required to give Holley notice of default and a ten-day cure period? Does the estate get to keep the 50% membership interests? If so, would it be in full satisfaction of all amounts due under the note? Is keeping the membership interests optional? Or would the membership interests be treated like UCC collateral, such that the estate would have to sell the membership interests in a commercially reasonable manner, and apply the proceeds to the note?

### III.  CONCLUSION

Holley's motion was procedurally improper, and must be denied in any event because of fact issues. The Trustee's motion was brought correctly and has some actual factual support, but cannot be granted because of disputed fact issues on a number of key points. The Court will deny both motions and set the proceeding for trial.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: January 9, 2018

Copies to: Counsel of Record