UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

NICHOLAS DONALD BRAINARD, JR.,            Case No. 17-11254-ta7

    Debtor.

EDWARD A. MAZEL, Trustee,

    Plaintiff,

v.                                                          Adv. Proc. 17-01060-t

MICHAEL ALLEN HOLLEY,

    Defendant.

## **OPINION**

Before the Court is Plaintiff's complaint for a money judgment against Defendant on a promissory note. Defendant retained counsel, asserted nine affirmative defenses in his amended answer, but did not attend the trial. Plaintiff presented evidence in support of his prima facie case, including 32 trial exhibits. Plaintiff and the debtor both gave direct and cross examination testimony. Being sufficiently advised, the Court will enter a money judgment in favor of Plaintiff and against the Defendant for the unpaid note balance, plus interest and the costs of collection, including reasonable attorney fees.

I.     FACTS

The Court finds the following facts:

Debtor and Defendant were 50% members in a New Mexico limited liability company, Vape Taos, LLC, and a Colorado limited liability company, Vape Durango, LLC (together, the "LLCs"). As the names imply, the LLCs owned and operated "vape shops" in Taos and Durango. Generally, vape shops sell a variety of vaporizers and nicotine-infused liquids. The liquids are

vaporized and inhaled as a substitute for cigarettes, pipes, cigars, and other tobacco-related products.[1]

The parties' vape shop in Durango opened in January 2016. The Taos vape shop opened earlier, but the record does not indicate when.

Business arrangements between Debtor and Defendant were loose and informal. In general, Debtor provided the bulk of the start-up and operating capital, while Defendant managed the shops. Defendant's wife, Maria Holley, prepared tax business returns for 2016 and 2017. Ms. Holley also did some bookkeeping for the businesses.

Debtor quickly became disenchanted with his partnership with Defendant. At trial, he testified to several significant problems, among which were:

- There was frequent drug use (marijuana) at the Taos location, primarily by Defendant;
- Defendant claimed he had sex with an underage girl at the Taos location;
- Defendant opened his own Vape shop in Scottsdale, Arizona while Debtor was trying to open the Durango, Colorado location. The Scottsdale shop diverted Defendant's attention from the joint venture. Further, Defendant took joint venture assets and labor and used them in his Scottsdale shop; and
- Defendant would not account for the substantial inventory he took from the joint venture for his personal use.

Because of his concerns, Debtor decided to part company with Defendant. Although not a lawyer, Debtor prepared a document entitled Purchase of Business Agreement (the "Agreement"), the relevant terms of which are:

> The Seller is the owner of 50% (the "Shares") of Vape Taos, LLC of 102 C. Paseo del Pueblo Norte, Taos, New Mexico 87571 AND Vape Durango, LLC of 1019 Main Avenue, Durango, Colorado 81301 (the "Corporations") which carries on the businesses of Vape Taos, LLC under the operating name Vape Taos in the State of New Mexico AND Vape Durango, LLC under the operating name of Vape Durango in the State of Colorado.

---

[1] Vapes and e-cigarettes are touted as a safer alternative to smoking because they do not contain the carcinogens found in tobacco.

> The Seller desires to sell the Shares to the Purchaser, and the Purchaser desires to buy the Shares.
>
> The price to be paid by the Purchaser to the Seller for the Shares will be $111,015.99 US Dollars (the "Total Purchase Price").
>
> The Closing of the purchase and sale of the Shares will take place on May 3, 2018 (the "Closing Date") . . . .
>
> At Closing, and upon the Purchaser resolving the balance of the Total Purchase Price in full to the Seller, the Seller will Provide the Purchaser with duly executed transfers of the Shares.
>
> A down payment of $20,000.00 US Dollars will be payable by the Purchaser on or before the "Execution" date (May 3, 2016). The balance of $91,015.99 US Dollars (the "Balance Amount") will be payable monthly at $2,500, with the outstanding Balance Amount due on the Closing Date (May 3rd, 2018). . . .
>
> The Balance Amount will be paid by the Purchaser with a promissory note . . . in the form attached . . . .
>
> This Agreement will not be assigned either in whole or in part by any Party without the written consent of the other Party.

Attached to the Agreement is a form of promissory note (the "Note"), also drafted by Debtor. Defendant signed the Note and Agreement on May 3, 2016. The relevant terms of the Note are:

> The Borrower promises to pay to the Lender at such address as may be provided in writing to the Borrower, the principal sum of $91,015.99 USD, without interest payable on the unpaid principal.
>
> This Note will be repaid in consecutive monthly installments of $2,500.00 each on the third of each month commencing the month following execution of this Note and continuing until May 3rd, 2018, with the balance then owing under this Note being paid at that time.
>
> Notwithstanding anything to the contrary in this Note, if the Borrower defaults in the performance of any obligation under this Note, then the Lender may declare the principal amount owing and interest due under the Note at that time to be immediately due and payable.

> All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the borrower. In the case of Borrower's default and the acceleration of the amount due by the Lender all amounts outstanding under this Note will bear interest at the rate of 5.00 percent per annum from the date of demand until paid.
>
> Lender's 50% ownership (Vape Taos, LLC AND Vape Durango, LLC) to the Security will be retained by the Lender until all payments due under this Note are paid in full.
>
> If the Borrower defaults in payment as required under this Note or after demand for ten (10) days, the Security will be immediately provided to the Lender and the Lender is granted all rights of possession as the owner.

Together, the Agreement and Note provide that Debtor would retained his membership interests in the LLCs until Defendant paid the Note in full.

After the Agreement was signed, Debtor sent all passwords related to the Vape businesses to Defendant. Debtor otherwise cooperated in the transition of the businesses to Defendant. After May 3, 2016 Debtor did not manage the businesses, control the businesses, receive a salary, draw, or other amount, log onto the Businesses' bank accounts, or otherwise operate the businesses.

Defendant fell behind in paying the Note almost immediately. He never caught up. Debtor attempted to get Defendant to pay the Note as agreed, but to no avail. Defendant's last payment on the Note was in April or May 2017.

On May 17, 2017, Debtor filed this chapter 7 case. Plaintiff was appointed the case trustee, in which capacity he continues to serve.

On July 11, 2017, Plaintiff sent a letter to Defendant, demanding payment of the Note. On that date, the unpaid principal balance on the Note was $75,000. Under the terms of the Note, interest began to accrue at 5% from that date.

The Note makes clear that, if Debtor is forced to take action to collect the Note, he is entitled to reimbursement of his collection costs, including attorney fees.

The Court tried the proceeding on September 19, 2018. On September 28, 2018, Plaintiff's counsel filed an affidavit of costs and attorney fees. The affidavit shows that Plaintiff incurred $11,688.25 in attorney fees, costs, advances, and gross receipts tax.

## II. DISCUSSION

A. <u>Plaintiff's Prima Facie Case</u>.

A suit to collect a promissory note is one of the simplest in law. *See, e.g., Rumsavich v. Borislaw*, 154 F.3d 700, 701 (7th Circuit 1998) (most suits to collect promissory notes are "straightforward affairs."); *United States v. Barrera*, 2014 WL 12691621, at *2 (C.D. Cal.) (described collection of a defaulted note "straightforward"); *Berggren v. Sun Oil Co.*, 79 F.R.D. 87, (E.D. Wis. 1978) ("simple collection on a promissory note"); *SFC Enterprises v. Diamond*, 2010 WL 3912855, at *1 (S.D.N.Y.) (to the same effect). The elements of an action to collect a promissory note are (1) the existence of a valid promissory note signed by the maker; (2) a balance due on the note; and (3) a demand on the maker for payment that has been made and refused, leaving the maker in default. *United States v. Bernet*, 2016 WL 3983760 (W.D. Mo.) (citing *Mobley v. Baker*, 72 S.W.2d 251, 257 (Mo. App. 2002)); *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. Civ. App. 1994) (elements are: there is a note; plaintiff is the holder; defendant is the maker; and a certain balance is due and owing). Plaintiff put on evidence that he is the holder of the Note; that Defendant signed the Note; that the Note is in payment default; and that $75,000 plus interest and collection costs is due under the Note. There was no need to prove that Plaintiff was entitled to "accelerate" all amounts due, as the Note matured on May 3, 2018. Plaintiff

therefore carried his burden of proving his entitlement to a money judgment against Defendant for the unpaid balance of the Note, including interest and collection costs.

B. <u>Defendant's Executory Contract Defense</u>.

Defendant's main defense is that the note and purchase agreement together constitute an executory contract. He argues that because the deadline to assume executory contracts expired long ago, the contract is deemed rejected, so the Trustee can no longer enforce it.[2] As set forth below, the defense fails.

Although the term is used in § 365, the Bankruptcy Code does not define "executory contract." Most courts, including the Tenth Circuit, have adopted the "Countryman" test for determining whether a contract is executory:

> [A] contract is executory if the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), as quoted in *In re Baird,* 567 F.3d 1207, 1210 (10th Cir. 2009).

The Seventh Circuit questioned whether the "Countryman" test reflected Congress' intent. *In re Streets & Beard Farm P'ship*, 882 F.2d 233 (7th Cir. 1989), the court stated:

> Taken literally, this definition would render almost all agreements executory since it is the rare agreement that does not involve unperformed obligations on either side. In our view, however, this interpretation would not effect the intent of Congress. Rather, we believe that Congress intended § 365 to apply to contracts where significant unperformed obligations remain on both sides.

---

[2] *See* 11 U.S.C. § 365(d)(1) (in chapter 7 cases, the deadline to assume or reject an executory contract is 60 days after the petition date. Executory contract that are not assumed by that deadline are deemed rejected).

567 F.3d at 235. For this opinion, the Court will use the Seventh Circuit's "significant unperformed obligations" test for determining whether the Note and/or Agreement constitute an executory contract.

Courts have held that installment sales contracts, where the seller's sole remaining obligation is to deliver clear title upon receipt of the sales price, are financing arrangements rather than executory contracts. *See, e.g., Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1174 (10th Cir. 2007) (buyer's sole obligation to make installment payments and seller's sole obligation to release its lien when delivering the vehicle title are insufficient to classify a sales contract as executory); *Streets & Beard*, 882 F.2d at 235 (if seller's only remaining obligation is to deliver legal title upon the completion of the payments, the contract is not executory); *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Exp., Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986) (§ 365 does not apply to security agreements, even if they have some formalities of executory contracts); *In re Fitch,* 174 B.R. 96, 102 (Bankr. S.D. Ill. 1994) (business sale agreement that involved real property, personal property, and goodwill was a financing device rather than an executory contract); *Pro Page Partners, L.L.C. v. Message Express Paging Co. (In re Pro Page Partners)*, 270 B.R. 221, 230 (Bankr. E.D. Tenn. 2001) (an agreement to sell personalty is not an executory contract if the seller has surrendered possession, even if title is retained pending payment in full); *In re McDaniel*, 89 B.R. 861, 875 (Bankr. E.D. Wash. 1988) (real estate contracts are security devices, not executory contracts); *In re Hart*, 61 B.R. 135 (Bankr. D. Or. 1986) (reservation of title to goods acts as a security interest and does not make a contract executory); *In re Lewis*, 185 B.R. 66, 68 (Bankr. N.D. Cal. 1995) (installment sale no longer involves an executory contract when the seller has delivered the thing sold); *General Motors Acceptance Corp. v. Rose (Matter of Rose)*, 21 B.R. 272, 275 (Bankr. D.N.J. 1982) (installment auto sales contract

is not executory after car has been delivered). *Cf. Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 537 (9th Cir. 1989) (contract for sale of cattle is executory where transfer of ownership cannot be accomplished by taking possession; seller must provide a bill of sale).

Here, Debtor retained his membership interests in the LLCs as collateral for payment of the Note. Debtor had no other performance obligations under the Agreement.

Defendant argues that Debtor had substantial performance obligations under the Agreement, and that he breached the obligations. For example, Defendant argues that Debtor was obligated to, but did not, give Defendant the computer, internet, bank account, and/or web passwords Defendant needed to run the businesses. This argument fails for two reasons. First, the Agreement does not require Debtor to do anything except deliver the membership interests after Defendant pays the purchase price. The obligations Defendant alleges are not found in the Agreement, and there is nothing in the record indicating that the parties had oral side agreements that varied the terms of the writings.

Second, the trial evidence does not support Defendant's position. Debtor testified that he gave Defendant all the business-related passwords and otherwise cooperated with Defendant to transfer operation of the businesses to Defendant. The Court finds Debtor's testimony credible and uncontradicted.

Because Debtor only retained a security interest in his membership interest in the LLCs and had no duties to Defendant other than to deliver title once the Note had been paid, the Court concludes that the Note and Agreement were a financing device, not an executory contract. Plaintiff therefore can enforce the Note.

C. <u>Defendant's Other Defenses</u>.

Defendants asserted seven other defenses in his answer and in the pre-trial order. These defenses include estoppel; consent to nonpayment; unclean hands; setoff; failure to make proper demand; impossibility of performance; and failure to mitigate damages. Defendant did not argue any of these defenses at trial, however, nor did he present any evidence in support of them. The Court finds that Defendant waived these defenses by failing to appear at trial and present evidence in support of them. The Court finds, further, that the evidence in the record does not support any of the defenses. The defenses are overruled.

D. <u>Amounts Due Under the Note</u>.

As of October 18, 2018, the Court calculates the amounts due under the Note as follows:

| | |
|---|---|
| Principal | $75,000.00 |
| Interest (at 5% per year from July 11, 2017 Through July 10, 2018 | $ 3,750.00 |
| Interest (at 5% per year from July 11, 2018 Through October 18, 2018 ($10.27 per day For 101 days) | $ 1,027.00 |
| Collection Costs: | $11,688.25 |
| Total: | <u>$91,465.25</u> |

The Court finds that the collection costs sought, i.e. $11,688.25, are reasonable. *See, e.g., Wescott Agri-Products, Inc. v. Geckler Companies, Inc.*, 2011 WL 13189790, at *4 (D. Minn.) (plaintiff has the burden of showing that its collection costs are reasonable); *Corvee, Inc. v. French*, 943 N.E.2d 844, 847 (Ind. App. 2011) (to the same effect); *Fifth Third Bank v. Mufleh*, 2005 WL 1125323, at *5 (Ohio App.) (contract provision that collection costs could be recovered is subject to the restriction that the costs be reasonable).

The Court also finds and concludes that the proper post-judgment interest rate is the 5% rate set forth in the Note, rather than the federal judgment rate specified by 28 U.S.C. § 1961(a). *See FCS Advisors, Inc. v. Fair Finance Co., Inc.*, 605 F.3d 144, 149 (2nd Cir. 2010) (rate specified by § 1961(a) applies unless parties clearly and unambiguously specified a different rate); *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998) (promissory notes at issue included an express, mutually agreed upon interest rate in the case of default). Here, the Note unambiguously states that "all amounts outstanding under this Note will bear interest at the rate of 5.00 percent per annum from the date of demand until paid."

### III. CONCLUSION

Defendant signed the Note but did not pay it as agreed. His defenses lack merit. Plaintiff is entitled to a money judgment for all amounts due under the Note. A separate money judgment will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 18, 2018

Copies to: Counsel of Record